UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| RICHARD LEE WILLIAMS, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>HAROLD W. CLARKE, Director, )<br>Virginia Department of Corrections, )<br>)<br>Respondent. )<br>) | Case No. 2:14-cv-375 |

### REPORT AND RECOMMENDATION

This matter is before the Court on the pro se Petitioner Richard Lee Williams' ("Williams") Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and the Respondent's Motion to Dismiss (the "Motion"), ECF No. 11. The Motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Eastern District of Virginia Local Civil Rule 72. After reviewing the briefs, the undersigned disposes of the Motion on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 11, be **GRANTED**, and Williams' Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2012, following a bench trial, the Circuit Court of the County of Accomack (the "trial court") found Williams guilty of distribution of morphine in violation of Virginia Code

§ 18.2-248. Trans. I,[1] at 143. Williams was tried jointly with co-defendant Maurice Chandler ("co-defendant"). *Id.* at 4. The Commonwealth's theory of the case was based on testimony from a confidential informant ("CI") and two officers assigned to the Eastern Shore Drug Task Force ("Task Force"): Steve Lewis of the Northampton County Sheriff's Office and Pat Coulter of the Accomack County Sheriff's Office ("Officers Coulter and Lewis"). *Id.* at 10, 57, 97. On March 24, 2012, the trial court sentenced Williams to twenty (20) years with twelve (12) years suspended. Trans. II[2] at 22.

CI testified that on August 11, 2011, she bought drugs from Williams and the co-defendant while working as a confidential informant for Officers Coulter and Lewis. Trans. I. at 12-13. In particular, CI testified that she had received a phone call from Williams earlier that day at around 11 a.m. *Id.* at 15, 40. CI then drove to the Task Force's office in Exmore, Virginia, and spoke with Williams on speakerphone in the presence of Officers Coulter and Lewis. *Id.* During this phone call, CI arranged to meet Williams in Melfa, Virginia outside a grocery store in order to buy liquid morphine. *Id.* Prior to the purchase, the officers searched CI, her personal vehicle, and gave her $100 to purchase the liquid morphine. *Id.* at 16-17. Following the search, and in which no contraband was found, CI drove immediately in front of the officers to the buy location. *Id.* The officers parked across the street to watch. *Id.* at 19. Around 12:30 p.m. or 1:30 p.m., when CI arrived at the grocery store, Williams approached CI's vehicle, told CI to exit her vehicle, and instructed CI to approach his vehicle. *Id.* at 17, 40. Williams then returned to his vehicle and sat in the driver's side seat. *Id.* According to CI, CI subsequently approached the driver's side door of Williams' vehicle, bent down, and while the driver's side door was still open, exchanged the $100 for a bottle of morphine. *Id.* at 17-18. At

---

[1] Record of the March 1, 2012 trial, which occurred in the trial court.
[2] Record of the May 24, 2012 sentencing hearing, which occurred in the trial court.

2

that time, the co-defendant asked CI whether she wanted to purchase Vicodin pills. *Id.* at 18-19. CI replied that she was interested but would have to retrieve money from the ATM in order to make the purchase. *Id.* at 18-19. CI then signaled to the officers, drove across the street, gave the officers the bottle of morphine she allegedly had purchased, and informed them of the possible Vicodin transaction. *Id.* at 19-20. The officers searched CI, her vehicle, and gave her $100 for the Vicodin pills. *Id.* at 20. According to CI, less than three minutes after buying the morphine, she returned and purchased Vicodin from the co-defendant. *Id.* at 20. The co-defendant starting walking down the street, and CI signaled to the officers, who then identified him by his face. *Id.* at 20-21. Then CI drove away, trailed by the officers. *Id.* at 20-21. The officers lost sight of CI momentarily after the second purchase. *Id.* at 92. CI testified that she maintained custody of the drugs until she returned the entire amount of the drugs to the officers. *Id.* at 22. Ultimately, the officers again searched CI and her vehicle and found nothing. *Id.* at 25. Additionally, CI testified that prior to the buys, she called the officers on her personal phone at the beginning of each purchase so that the transaction was recorded for the officers. *Id.* at 23-24, 41. Moreover, she asked the officers whether they were still connected following the buys, and the officers replied they indeed were. *Id.* at 24. The officers provided CI with audio and video equipment to record the transaction; however, the equipment malfunctioned and never recorded the transaction. *Id.* at 22-23, 41. CI testified that she received $100 as compensation for each transaction. *Id.* at 21.

On cross-examination, CI admitted to being a convicted felon. *Id.* at 27-28. Moreover, she admitted to having been convicted of crimes of moral turpitude, including lying, cheating, and stealing. *Id.* In particular, CI was convicted of receiving stolen property and petit larcenies. *Id.* at 33. Additionally, as CI admitted, at the time of her testimony, she had pending felony

charges for separate offenses that included lying, cheating, and stealing. *Id.* at 29. Specifically, CI had pending grand larceny, burglary, and petit larceny charges. *Id.* at 33. However, these charges arose after the buys were made. *Id.* at 141. CI expressed that she did not expect that her testimony in the instant case would help her pending felony cases. *Id.* at 29-30. Additionally, CI testified that while working with the Task Force, CI was using opiates and pain pills, *id.* at 31, and she admitted to being addicted to painkillers and prescription pills. *Id.* at 37, 47. When CI was searched by the officers each time, she was not asked to remove her clothes. *Id.* at 45. Moreover, although CI's vehicle was searched, including the trunk, the backseats, the consoles, and under the seats, a drug-sniffing dog was not used. *Id.* at 45-46. On redirect, CI testified that her last positive drug test was in September 2011, and since then she has been clean. *Id.* at 51-52. Moreover, CI testified that she was not hiding anything, particularly pills, in her vehicle, on her person, and denied taking any of the pills. *Id.* at 53-54.

The second witness for the Commonwealth was Officer Steve Lewis of Northampton County Sheriff's Office, assigned to the Task Force. *Id.* at 57. Officer Lewis testified essentially to the same fact scenario as CI. *Id.* at 57-59, 62-62, 65. In addition, Officer Lewis clarified that when CI had called the person who allegedly was Williams, CI originally requested for either cocaine or marijuana, which was what the officers normally would have informants buy. *Id.* at 59. On this occasion, however, Williams said he had liquid morphine. *Id.* CI subsequently looked to the officers, and the officers approved the purchase. *Id.* Williams then asked to meet at the grocery store in Melfa, Virginia to which CI agreed. *Id.* Officer Lewis testified that the officers patted CI down, pull her pockets out, and checked CI's shoes. *Id.* at 60. However, the officers did not search CI's underwear. *Id.* No drugs were found either on CI's person or in CI's vehicle. *Id.* The first search took about forty-five minutes but successive searches were quicker.

*Id.* at 61, 76, 78. Moreover, the officers were about 100 yards away from the transaction, no vehicles were obstructing their view, and the officers had a clear view of the transaction. *Id.* at 63-64. In addition, when CI exchanged the money for the drugs, she bent down for about ten to thirty seconds. *Id.* at 64-65. During this time, Officer Lewis lost sight of CI for about thirty to forty-five seconds because he was looking at the co-defendant who was walking down the road after the transaction. *Id.* at 85. Moreover, Officer Lewis was unable to see either the money or pill bottles exchange hands. *Id.* at 93. However, Officer Lewis did not see her make any furtive movements while in sight. *Id.* at 94-95. Officer Lewis also could not remember how much CI was paid but $100 for each would have been an unusually high amount. *Id.* at 87. The money was not marked because the Drug Force generally only marks bills for buy busts, not buy walks, like this transaction. *Id.* at 94.

The final witness for the Commonwealth was Officer Pat Coulter of Accomack County Sheriff's Office, also assigned to the Task Force. *Id.* at 97. Officer Coulter's testimony substantiated the testimony of both Officer Lewis and CI. Officer Coulter however testified that the officers could only hear CI's side of the conversation with Williams and that the initial search only took a couple of minutes. *Id.* at 114. Officer Coulter indicated that he had paid CI $100 in total: $50 for the buy from Williams and $50 for the buy from co-defendant. *Id.* at 121.

In closing arguments, the Commonwealth argued that the officers took every precaution possible to keep an eye on CI, searching CI before and after. *Id.* at 129. Defense counsel focused on the lack of audio and video footage, CI's prior criminal history, CI's drug use, the failure to strip search CI, CI's alleged incentives to lie, and the inability of the officers to view the exchange of money or drugs. *Id.* at 132-34, 136. The Court ultimately found CI's testimony "credible and that it is also corroborated in that the things to which she testified were observed

by Officers Coulter and Lewis" and found Williams guilty beyond a reasonable doubt of distribution of morphine. *Id.* at 142. At the May 24, 2012 sentencing hearing, the Court sentenced Williams to twenty (20) years and suspended twelve (12) years with eight (8) years to serve. Trans. II at 22.

Williams's trial counsel appealed his conviction to the Court of Appeals of Virginia and argued that (1) the evidence presented to the trial court was insufficient to support his conviction that he sold morphine to an informant because CI was a convicted felon, addicted to drugs, was currently facing additional charges involving moral turpitude, had an incentive to lie to receive preferential treatment in her pending cases, and the officers did not maintain sight of CI at all times and "easily could have hidden drugs in [CI's] car to set up the Defendant;" and (2) the sentence imposed was an abuse of discretion because the Court did not give proper weight to mitigating factors or Williams' individual circumstances. Appellant Brief, *Williams v. Commonwealth*, No. 1111-12-1, at 7-9 (Va. Ct. App. 2013). On February 4, 2013, the Court of Appeals denied Williams' petition for appeal. Order, *Williams v. Commonwealth*, No. 1111-12-1, at 6-7 (Va. Ct. App. 2013). The Court explained that, "Appellant failed to present this argument to the trial court . . . [and] [a]ccordingly, Rule 5A:18 bar[red] [its] consideration of this issue on appeal." *Id.* at 6. Subsequently, on May 6, 2013, the Supreme Court of Virginia dismissed Williams' petition for appeal from the Court of Appeals for failure to address the ruling of the Court of Appeals. On September 26, 2013, Williams filed a state habeas corpus petition in the Supreme Court of Virginia. Therein, Williams alleged that counsel was ineffective for failing to preserve for appeal "numerous issues." On April 4, 2014, the Supreme Court of Virginia denied and dismissed this habeas petition. *Williams v. Dir. Of the Dep't of Corrs.*, No. 131505 (Va. Apr. 4, 2014).

On July 16, 2014,[3] Williams filed the instant federal habeas petition, ECF No. 1, his first § 2254 petition in this Court, alleging ineffective assistance of counsel on the ground that counsel "failed to object and therefore preserve for [a]ppeal numerous issues[,] which she had a duty to object to [and] therefore preserv[e] for [a]ppeal," ECF No. 1 at 15-16. The Virginia Assistant Attorney General, on behalf of the Respondent, submitted a Motion to Dismiss, Rule 5 Answer, brief in support of the Motion to Dismiss, and Roseboro Notice on April 6, 2015. ECF Nos. 11-14. Williams filed a Response to Respondent's Motion to Dismiss on April 24, 2015, ECF No. 15. In it, Williams elaborated on the "numerous" issues that his trial counsel allegedly failed to raise. Williams emphasized that his trial counsel failed to adequately preserve the sufficiency of the evidence claim, *id.* at 7-11, failed to object to the admission of the certificate of analysis, *id.* at 11, and, failed to object to the credibility of CI, *id.* at 7-8. The undersigned interprets Williams' claims as follows:

I. Williams was denied effective assistance of counsel based on counsel's alleged failure to preserve the sufficiency of the evidence claim for appeal.

II. Williams was denied effective assistance of counsel based on counsel's alleged failure to object to the admission of the certificate of analysis.

III. Williams was denied effective assistance of counsel based on counsel's alleged failure to object to the credibility of CI.

The Respondent did not reply and the time to do so passed. Therefore, the Motion to Dismiss is ripe for disposition.

---

[3] The undersigned uses the date Williams placed his Petition in the prison mailing system. *See* ECF No. 1 at 14; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988) (articulating the "prison mailbox rule").

## II. PROCEDURAL ISSUES

### A. Statute of Limitations

Williams filed his habeas petition in this Court before the applicable statute of limitations deadline passed, and therefore it is timely. Section 2254 petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from "the date on which the judgment became final by the conclusion of direct review." *Id.* § 2244(d)(1)(A). However, in calculating the limitations period, the Court excludes, or tolls, the time during "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. *Id.* § 2244(d)(2).

Williams' conviction became final on August 4, 2013, or ninety days after the Supreme Court of Virginia denied Williams' petition, and the time to appeal that order to the United States Supreme Court expired. *See Harris v. Hutchinson*, 209 F.3d 325, 328 & n.1 (4th Cir. 2000) ("[T]he time for seeking direct review of [the] state-court conviction was concluded . . . when the period for filing a petition for a writ of certiorari in the United States Supreme Court expired."). As a general matter, then, Williams had until August 4, 2014 to file his federal habeas petition. However, Williams' state habeas petition filed on September 26, 2013, and dismissed on April 4, 2014, tolled the statute of limitations for 191 days. Thus, Williams was required to file his federal habeas petition before February 11, 2015. Williams was well within the statute of limitations deadline when he filed this Petition on July 16, 2014. ECF No. 1 at 14. Therefore, the undersigned **FINDS** that Williams' petition is timely.

### B. Exhaustion

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F.Supp. 1428, 1436 (E.D. Va.1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993).

When Williams filed his state habeas petition with the Supreme Court of Virginia, he advanced a claim of ineffective assistance of counsel based on counsel's failure to preserve for appeal "numerous issues." Despite the Supreme Court of Virginia recognition that Williams had failed to identify which issues his counsel allegedly failed to preserve, the Supreme Court of Virginia nonetheless considered the claims raised in his counsel's brief filed to the Court of Appeals of Virginia. Specifically, the Supreme Court of Virginia considered whether counsel's failure to argue on appeal that the evidence was insufficient was ineffective assistance of counsel.

Williams initially petitioned the federal court with that same general claim, i.e., that counsel was ineffective for "numerous issues," and indeed, the Respondent conceded that "Williams [] exhausted his claims by presenting them to the Supreme Court of Virginia." ECF No. 13 at 3. While the undersigned agrees that Claim 1, whether counsel was ineffective for

failing to argue the sufficiency of the evidence on appeal, was exhausted because the Supreme Court considered that claim, it does not appear that his other claims were properly exhausted.

In Williams' response brief, he identified those claims included in his general allegation of "numerous issues" and in so doing, named additional claims not presented to the Supreme Court of Virginia, including counsel's failure to object to CI's credibility and the failure to object to the admission of the certificate of analysis. The Respondent did concede that Williams' ineffective assistance of counsel claims had been exhausted, and the Respondent's concession does function as a waiver of the exhaustion bar. *See, e.g., Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) (finding the state expressly waived exhaustion by admitting that "Bledsue has sufficiently exhausted his state remedies"). However, "[a] district court has discretion in deciding whether to accept a state's express and unconditional waiver of the exhaustion requirement." *Thomas v. Sutton*, 841 F.2d 1123, at * 2 (4th Cir. Feb. 25, 1988) (unpublished opinion). In so doing, the court should consider "whether 'the interests of justice would be better served by addressing the merits of the habeas petition or by requiring additional state proceedings before doing so.'" *Id.* (quoting *Granberry v. Greer*, 481 U.S. 129, 136 (1987)). "In the usual case . . . federalism, expense to litigants, and the conservation of judicial resources are all served by honoring the waiver and deciding the merits." *McGee v. Estelle*, 722 F.2d 1206, 1214 (5th Cir. 1984). Here, were the Court to reject the Respondent's waiver and require Williams to present his claims to the state court, he would be barred by Virginia Code Section 8.01-654(B)(2), which prohibits courts from granting writs of habeas corpus ad subjiciendum "on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code § 8.01-654(B)(2)(2005). Thus, rejection of the Respondent's

waiver is futile, and in the interest of judicial economy, the undersigned will address the merits of Williams' claims.

### III. STANDARD OF REVIEW

When a state court addressed the merits of a claim that is subsequently raised in a 28 U.S.C. § 2254 petition, a federal court may not grant habeas relief on that claim unless, *inter alia*, the state court decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). The Court independently reviews whether that decision satisfies either standard. *See Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by th[e U.S. Supreme] Court on a question of law or if the state court decides a case differently than th[e U.S. Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. As to whether a state court decision is an "['objectively'] unreasonable application" of clearly established federal law, the state court must "identif[y] the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of the prisoner's case." *Id.* at 410. Ultimately, though, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is *firmly convinced* that a federal constitutional right has been violated." *Id.* at 389 (emphasis added). It is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997).

Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786. "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2554(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). Here, as in *Premo*, the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law." *Id.*; 28 U.S.C. § 2254(d)(1).

To be entitled to habeas relief in state court for ineffective assistance of counsel claims under the Sixth Amendment, Williams would have to show both that his defense counsel provided deficient assistance and that he was prejudiced as a result. *Strickland v. Washington*, 446 U.S. 668, 700 (1984). First, to establish deficient performance, Williams is required to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Williams is also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693–694 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that the petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding.").

In the context of Sixth Amendment ineffective assistance of counsel claims that have already been rejected by the state court, the United States Supreme Court summarized the high bar petitioners then face in a federal 2254 habeas petition:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' [466 U.S. 668, 689 (1984)]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles [v. Mirzayance]*, 556 U.S. [---, ---], 129 S. Ct. [1411, 1420 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo*, 131 S. Ct. at 740. With that standard in mind, the Court now turns to the merits of Williams' claims.

## IV. ANALYSIS

### A. Claim 1: Ineffective Assistance of Counsel for Failure to Preserve Sufficiency of Evidence

Williams alleged in his state habeas petition that his trial counsel was ineffective for failing to preserve "numerous issues" for appeal. *Williams v. Dir. of the Dep't of Corrs.*, No. 131505, at 1. Williams contended that had the issues been preserved, it was "highly likely" he would have prevailed on appeal. *Id.* The Supreme Court of Virginia determined that Williams failed to "identify the specific issues counsel allegedly failed to preserve." *Id.* at 2. However, the Supreme Court of Virginia nonetheless recognized that the issue that his trial counsel sought to address was the sufficiency of the evidence claim. *Id.* The Supreme Court of Virginia reiterated that the trial "counsel argued [that] a confidential informant, who testified [that] she

purchased morphine from petitioner, was not a credible witness." *Id.* The Supreme Court of Virginia specifically held that

> [t]o the extent [Williams] is referring to this issue, he fails to establish that had counsel preserved this issue, [Williams] would have prevailed on appeal. The record, including the trial Trans., demonstrates that the confidential informant testified [that Williams] sold her morphine and police officers testified they observed the transaction. The trial court found the confidential informant's testimony to be credible and corroborated by other evidence. Thus, [Williams] has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Id.* at 2.

Williams' federal petition for habeas corpus alleged that his counsel "failed to object and therefore preserve for [a]ppeal numerous issues [to] which she had a duty to object." ECF No. 1 at 15. As evidence of his counsel's duty and failure to object, Williams noted, and appended to his petition, the February 4, 2013 Notice from the Court of Appeals of Virginia denying his appeal. *Id.* at 17. Williams contended that had his trial counsel preserved these issues, he would have been successful. *Id.* at 16. He argued that on appeal "prejudice should be presumed in the first inst[a]nce where it is clear that the Court of [A]ppeals reviewed nothing in the record regarding the case upon appeal, because of counsel[']s ineffectiveness in petitioning the court." ECF No. 15 at 7. In addition, Williams also claimed that had the sufficiency of the evidence issue been preserved, it was "highly lik[e]ly" he would have prevailed on appeal. ECF No. 1 at 15. The Respondent argued that, regardless of any alleged failure by counsel, Williams' sufficiency of the evidence claim would have failed had it been preserved for appeal because the evidence was sufficient. ECF No. 13 at 7-8.

The Supreme Court of Virginia's failure to find a presumption of prejudice from Williams' counsel's alleged failure to preserve an issue on appeal is not an objectively unreasonable application of federal law. The United States Supreme Court recognized three

categories in which a reviewing court should presume prejudice, rather than require a defendant to demonstrate it under *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 287 (2000) (citing *Strickland*, 466 U.S. at 692). First, a reviewing court will "presume prejudice in a case of denial of counsel. Second, 'various kinds of state interference with counsel's assistance' can warrant a presumption of prejudice. Third, 'prejudice is presumed when counsel is burdened by an actual conflict of interest.'" *Id.* (quoting *Strickland*, 466 U.S. at 692). "A finding of per-se prejudice under any of these three prongs is 'an extremely high showing for a criminal defendant to make.'" *Glover v. Miro*, 262 F.3d 268, 275 (4th Cir. 2001) (quoting *Brown v. French*, 147 F.3d 307, 313 (4th Cir. 1998)). To the extent that Williams alleged a prejudice of either actual or constructive denial of counsel, *see Strickland*, 466 U.S. at 693, from his counsel's failure to raise an issue, there is little support in case law for Williams' proposition. *See, e.g., Chandler v. Netherland*, No. Civ.A.96-0855*R, 1997 WL 461907, at *13 (W.D. Va. Aug. 4, 1997) (unpublished opinion) ("The court concludes that [the defendant's] attorney's failure to preserve a federal due process challenge to Virginia's statutory review did not amount to ineffective assistance of counsel because it is highly unlikely that a challenge on those grounds would succeed."); *see also Smith v. Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.")).

Additionally, the Supreme Court of Virginia's failure to credit Williams' allegation that had his counsel objected to CI's credibility, the outcome of the proceeding would have been different, is not an unreasonable application of federal law. "When reviewing the challenges to the sufficiency of the evidence, [the Court] determine[s] whether 'any rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt.'" *United*

*States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In addition, "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(d)(2)). "We do not review the credibility of witnesses when we evaluate whether there existed sufficient evidence to support a conviction." *Wilson*, 115 F.3d at 1190 (citing *United States v. Reavis*, 48 F.3d 763, 771 (4th Cir. 1995) *cert. denied*, 515 U.S. 1151, (1995)). Moreover, "[j]ust as the uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction, the uncorroborated testimony of an informant may also be sufficient." *Id.* (citing *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983)). The evidence in this case was almost entirely testimonial, and the trial court's credibility determination is hardly "stark and clear" error. *Cagle*, 520 F.3d at 324. The evidence shows that the officers searched CI and CI's personal vehicle immediately before and after the transaction. Trans. I, at 20, 25. CI purchased liquid morphine from Williams in a store parking lot. *Id.* at 17-18. Two officers observed the transaction from a distance, and the officers ultimately recovered just the liquid morphine from CI. *Id.* at 19-22. The trial court made an explicit finding that it found CI's testimony to be credible and corroborated by the officers and the Government's theory of the case. *Id.* at 142. Therefore, Williams fails to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Supreme Court of Virginia's determination that Williams failed to prove prejudice on his ineffective assistance of counsel claim was not an objectively unreasonable application of *Stickland*. Williams' contention of the high likelihood of success in his sufficiency of the evidence issue had it been preserved for appeal is a conclusory allegation and is insufficient to

establish prejudice. As many courts have noted, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998); *Fitzgerald v. Thompson*, 943 F.2d 463 (4th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989); *see also United States v. Collins*, 68 F.3d 461, 1995 WL 606786, at *1 (4th Cir. 1995) ("Because [the petitioner] failed to show he was prejudiced by counsel's actions, and only asserted conclusory allegations, the district court properly denied relief on [the petitioner's] claims of ineffective assistance of counsel."). Therefore, the undersigned recommends that Claim One be dismissed.

### B. Claim 2: Failure to Object to Introduction of the Certificate of Analysis

In Claim Two, Williams claims that his counsel was ineffective because he failed to object to the admission of the certificate of analysis. *See* ECF No. 15 at 11 ("Had counsel objected to the entry of the alleged evidence (drugs)[,] then it is clear that the proceeding would have been different."). However, Williams did "not articulate . . . what . . . objections counsel should have raised concerning the certificate of analysis." *LeBorde v. Virginia*, 2011 WL 2358510, at *6 (E.D. Va. 2011). Moreover, counsel's failure to make a frivolous motion does not constitute ineffective assistance of counsel. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that "counsel is not required to make futile motions or objections"). Thus, Williams failed to satisfy either prong of *Stickland* and, therefore, claim two must be dismissed.[4]

### C. Claim 3: Failure to Object to CI's Credibility and Preserve the Issue for Appeal

---

[4] Insofar as this claim is also part of Williams' sufficiency of the evidence argument, it also fails for the same reason. *See* ECF No. 15 at 11 ("[N]o one came forth to testify to the certificate of an[a]lysis of the alleged drugs. Therefore the evidence was not sufficient.").

17

In Claim Three, Williams argued that his counsel was ineffective because he did not object to CI's credibility at trial. ECF No. 1 at 15-16. Williams made conclusory allegations in an attempt to undermine the CI's credibility, but this Court will not disturb the trial court's credibility finding absent clear and convincing evidence. *See Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) ("Credibility determinations, such as those the state . . . court made regarding [a witness], are factual determinations. As such, they 'are presumed to be correct absent clear and convincing evidence to the contrary . . . '" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Williams presented no evidence that can rise to the standard of clear and convincing evidence; thus, the undersigned recommends that Claim Three be dismissed.

## V. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 11, be **GRANTED** and Williams' petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is

made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the Petitioner and counsel of record for the Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 02, 2015

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Richard Lee Williams, No. 1090336
Deerfield Correctional Center
21360 Deerfield Dr
Capron, VA 23829
*Pro Se* Petitioner

Aaron Jennings Campbell
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for the Respondent

Fernando Galindo
Clerk of the Court

By:
Deputy Clerk
September ___, 2015